UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 06-146 (JDB) |
| : | |
| v. : | |
| : | |
| DELORIS K. COMPTON : | |

## MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. As shown below, the government respectfully submits that the appropriate period of incarceration for Ms. Compton depends in large part on what she did with funds she recently obtained by cashing out her 401k plan at her former employer: if those funds remain available for restitution, she should be sentenced at the low end of the guidelines range; if not, she should be sentenced at the very top of the range.

## BACKGROUND

Ms. Compton was employed as a Senior Accountant at the Washington, D.C. headquarters of the Paralyzed Veterans of America, at 801 18th Street, NW, in the District of Columbia. The Paralyzed Veterans of America is a non-profit chartered by Congress to help veterans of the armed forces who have experienced spinal cord injury or dysfunction. It uses its expertise to meet the special needs of its members through efforts aimed at improving members' receipt of health care and other benefits; by supporting research regarding spinal cord injury; and by working to maximize the independence of its members.

The Paralyzed Veterans of America draws checks on an account it holds with Bank of America, and it uses computer-generated checks produced through a check-writing software program. The paper stock for the check is left blank, and the computer software fills in the payee's name and address, and the date and amount of the check.

Ms. Compton used her position as a Senior Accountant to write checks to herself through the check-writing software program. Between October 2001 and October 2005, she wrote twenty-nine checks to herself drawn on the Paralyzed Veterans of America's accounts, thereby embezzling $182,858.97. Ms. Compton altered the computer records for those checks to give the false impression that the checks had been voided. She thereafter transported the checks in interstate commerce and deposited them into her bank account at the Alexandria, Virginia branch of Bank of America, knowing them to have been stolen.

## DISCUSSION

Ms. Compton deserves credit for agreeing to an early, pre-indictment plea after giving a fully inculpatory statement to agents from the Federal Bureau of Investigation upon their first contact with her.

But it cannot be forgotten that Ms. Compton stole an extraordinary amount of money (nearly $200,000); that she stole the money over an extended period of time (nearly four years); and that she stole from a victim whose constituents deserve so much more than to be taken advantage of by someone earning a salary on the dues they pay.

In that regard, the government takes issue with defendant's contention that this case should be distinguished from "a crime of violence [and] a drug-related offense." Def. Sentencing Memo. at 6. Unlike many criminal defendants in violent crime cases, whose crime typically

-2-

result from a terribly bad set of (drug- or alcohol-influenced) choices on a particular night, Ms. Compton made the choice to steal from the Paralyzed Veterans of America over and over and over again. The moral, legal, and ethical choice whether to steal was presented to her time and time again, and she chose to commit crimes—twenty nine times, to be exact. Moreover, unlike defendants at all but the very top end of the drug trade, Ms. Compton was earning $63,000 annually, and she enjoyed a full complement of vacation, sick-leave, health-care and other employee benefits.

Indeed, other than the truly aggravating nature of a crime involving embezzlement from a group dedicated to helping paralyzed veterans, one of the truly troubling questions about this case is what Ms. Compton did with the nearly $200,000 she stole. This question is compounded because Ms. Compton recently cashed in her 401k plan and received more than $85,000—money she did not report to the probation officer. See Presentence Report ¶ 49.

Under the circumstances, the government believes that, if the defendant has that $85,000 available as a down payment toward the $182,858.97 she owes as restitution, she should be sentenced at the low end of the guideline range. If, however, she cannot account for those funds, even though she obtained access to $47,000 of that money after she pleaded guilty, the government respectfully requests that, among other things, she be sentenced at the top end of her guideline range.

In either event, the government respectfully requests that Ms. Compton be ordered to pay the full restitution amount to the Paralyzed Veterans of America, and that, after her incarceration, she be placed on three years of supervised release.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: _____
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-4862

Certificate of Service

I hereby certify that, on this 31st day of August 2006, I caused a copy of the foregoing memorandum in aid of sentencing to be served by electronic filing on counsel for the defendant:

Rita Bosworth, Esquire
Office of the Federal Public Defender
625 Indiana Avenue, NW
Washington, D.C. 20004

_____
Timothy G. Lynch
Assistant United States Attorney

-4-